## GRAY *v.* MAYOR AND COUNCIL OF GRIFFIN.

1. In erecting and maintaining a city prison a municipal corporation is ex-
   ercising a purely governmental function, and is, therefore, not liable in
   damages to a person arrested and imprisoned therein by its police officers,
   for injuries sustained by him, while so confined, by reason of the im-
   proper construction or negligent maintenance of such prison.
2. A municipal corporation is not liable for the illegal arrest of a person by
   its police officers, nor for his consequent imprisonment.
3. Nor is a city liable in damages because its mayor required of a person
   charged with a violation of a city ordinance a larger bond for his appear-
   ance than the law authorized, even if the failure of such person to give
   bond and his consequent confinement were occasioned thereby.

Argued May 2, — Decided  July 13, 1900.

Action for damages.    Before Judge Reagan.    Spalding
superior court.    January term, 1900.

Gray sued the Mayor and Council of the City of Griffin, on account of an illegal arrest and imprisonment, and of physical injury and mental suffering caused by the condition in which the prison was kept. He alleged that he was, without just cause, arrested by police officers of the city, without a warrant, and placed in the guard-house of the city, and there detained from December 24 until December 26, without a trial and without having been afforded at the time of his arrest an opportunity to give bond, though he offered to do so; that "he was not drunk or disorderly, and no reasonable cause can be assigned for such conduct on the part of the city government, and he was not guilty of any violation of law whatever"; that he was imprisoned in a cell which, though the weather was very cold, was not provided with any means of heating, and in the north of which was an open window, crossed with iron bars, which was not provided with a shutter or other means to keep out the wind, and a small mattress and two thin rags which had been blankets were all the city provided to keep him from freezing; that, though he was sober, drunken negroes were placed in the same cell with him, the cell was filthy, drunken men had vomited over the floor, and a most horrible odor prevailed; that the law required the city to provide a place for the detention of prisoners charged with offenses against the city, and that it should be suitable for human beings, and the city had authority to levy a tax upon its citizens to keep the prison in proper condition, but for many years has kept it in the condition above described, and therein has been grossly and criminally negligent. He alleged further, that, although under the laws of the city no bond for over $200 can be fixed for a violation of the city ordinances, and although he was informed by the city officers that his bond would be $50, as the only charge against him was the violation of a city ordinance, the mayor ordered that a bond for this amount with good security, which had been tendered, be refused, and required that a bond for $250 be given, and he was kept in his cell until it was given; that his detention without a hearing was in violation of ordinances which required that he should have a trial the next morning, and was by direction of the mayor and council, and the illegal fixing of an excessive bond was their direct act and order; and that

the condition of the prison was well known to the city.  A demurrer to the petition was sustained, and the plaintiff excepted.

*James Flynt* and *Lloyd Cleveland*, for plaintiff.
*William H. Beck* and *O. H. P. Slaton*, contra.

FISH, J.   Taking the allegations of the plaintiff's petition to be true, as we must do upon demurrer, he certainly has just and great cause to complain of the needless hardships and suffering which he endured while confined in the city guard-house. But however strongly the story of his sufferings may appeal to our sentiments of humanity, the law affords him no redress against the municipality.   The general rule is well established, that a municipal corporation is not liable in damages for injuries sustained by reason of the negligent or improper exercise of a purely governmental power.   The preservation of the public peace, quiet, good order, etc., of a community is a governmental function.   Where the legislative authority of a city passes ordinances for such purposes, it is clearly exercising a governmental power.   When, for the purpose of enforcing such ordinances, the city erects and maintains a prison wherein to confine offenders, for the purpose of punishment, or those charged with offenses, for safe-keeping until they can be tried, it is exercising the same power.   The enactment of such ordinances and the provisions made for their enforcement belong to the police power, which is purely governmental in character. In *Love* v. *Atlanta*, 95 *Ga.* 129, this court held, that as "The duty of keeping the streets clear of putrid and other substances offensive to the sense of smell and which tend to imperil the public health devolves, under the charter of the City of Atlanta, upon the board of health of that city ; and the functions of this department of the city government being governmental and not purely administrative in their character, it follows that if, in the exercise of such functions and in the discharge of the duties devolving upon this department thereunder, a private citizen is injured by the negligence of one of its servants in and about such work, no right of action arises against the city."   In the opinion Mr. Justice Atkinson said : "The principle of non-liability rests upon the broad ground that, in the discharge of its purely governmental functions, a corporate body to which

has been delegated a portion of the sovereign power, is not liable for torts committed in the discharge of such duties and in the exercise of such powers." In *Bartlett* v. *Columbus*, 101 *Ga.* 300, it was held, that "A municipal corporation is not liable, in an action for false imprisonment, for damages alleged to have been occasioned to the plaintiff by reason of his imprisonment under a judgment rendered against him by a municipal court, for the violation of an ordinance; and this is true though such judgment may have been irregular, erroneous, or even void." In *Nisbet* v. *Atlanta*, 97 *Ga.* 650, it was held, that "A municipal corporation is not liable in damages for the death of one convicted in a corporation court and sentenced to work upon the public streets, although his death was occasioned while the convict was engaged in such work, and resulted from negligence on the part of the foreman who had been placed by the municipal authorities in charge thereof, and from the failure of such foreman to provide the convict, after his injury, with proper medical attention and treatment." In the opinion Mr. Justice Lumpkin said: "Neither the law of master and servant nor the doctrine of respondeat superior applies" in such a case, "because, in such matters, the municipal corporation is exercising governmental powers and discharging governmental duties, in the course of which it, of necessity, employs the services of the officer in question."

In the case of Brown *v.* Guyandotte, 12 S. E. 707, the Supreme Court of West Virginia held, that "A town is not liable for damages for the death of a person caused by the burning of its jail while such person was confined therein for a violation of its ordinances, though such fire was attributable to the wrongful act or negligence of the officers or agents of the town." Brannon, J., in the opinion said: "I think the duty and function of keeping a jail and confining therein offenders against the municipal ordinances of a town are plainly purely governmental in character." In La Celf *v.* Concordia, 41 Kan. 323, it was held, that "Where a person is confined in a city prison, upon conviction for disturbing the peace and quiet of the city, the city is not liable for damages for injuries sustained by reason of the bad character of the prison, or the negligence of the officer in charge of the same." This decision was followed in

City of New Kiowa *v.* Craven, 46 Kan. 114, where an administratrix sought to recover from a city damages for the death of her intestate husband, alleged to have been caused by his confinement and exposure in an unhealthy, uninhabitable, and filthy prison.    In Gullikson *v.* McDonald, 62 Minn. 278, it was held, that "A municipal corporation is not liable for negligently maintaining its lockup in a defective and unfit condition, by reason of which a prisoner confined therein is injured."    In Blake *v.* Pontiac, 49 Ill. App. 543, a case in which damages were sought for injuries alleged to have been sustained by reason of the confinement of the plaintiff in an improperly constructed and negligently maintained city prison, it was held that the municipal corporation was not liable; and that "The building of the calaboose, and the establishing of regulations for the detention of prisoners therein, to answer to charges of violating the ordinances of the city, are clearly within the police power of municipal corporations and are not in their nature corporate acts."    So, in Kelly *v.* Cook, 5 Am. Neg. Rep. 94, decided by the Supreme Court of Rhode Island, October, 1898, it was held, that "A demurrer to a declaration was properly sustained, where it was alleged that complainant was negligently cared for while temporarily confined in a police station, as such negligence did not render the city liable, since in caring for persons under arrest, the city discharged a public duty."    The precise question under consideration was decided in another recent case, in New York, and the court held that, "Where a person was arrested for violation of a village ordinance and imprisoned in a place negligently permitted to become and remain so dilapidated that, in consequence of the exposure, he contrated a disease which caused his death, the village was not liable for the omission of its duty in the exercise of its governmental functions." Eddy *v.* Ellicottville, 35 App. Div. 256.

In support of their contention as to the liability of the municipal corporation for the injuries sustained by the plaintiff while confined in the city guard-house, his counsel cite Moffit *v.* Asheville, 103 N. C. 237, and Shields *v.* Durham, 116 N. C., 394, in each of which cases the allegations of the respective plaintiffs were of a similar character to those in the present case.    In each of those cases, however, the court held that

the municipal corporation sued was not liable in damages, as it had complied with the law of North Carolina in the construction of its prison and the furnishing of the necessary supplies, etc., therefor, and the plaintiff's injuries were sustained in consequence of the neglect of the jailer or attendants, of which notice had not been brought to the city before the injuries were received ; and the court recognized and upheld the general rule, stated by Avery, J., in the Asheville case, that, "When a city or town is exercising the judicial, discretionary, or legislative, authority conferred by its charter, or is discharging a duty imposed solely for the benefit of the public, it incurs no liability for the negligence of its officers, unless some statute (expressly or by necessary implication) subjects the corporation to pecuniary responsibility for such negligence." These cases are doubtless cited because they do recognize the principle which obtains in North Carolina, which, as stated in the same opinion from which we have just quoted, is, that towns and cities "are liable in damages only for a failure to so construct their prisons, or to provide them with fuel, bed-clothing, heating apparatus, attendants, and other things necessary to secure to the prisoners committed to them a reasonable degree of comfort, and protect them from such bodily suffering as would injure their health." But this principle is derived by the Supreme Court of North Carolina from the constitutional and statutory law of that State, the case in which it was first involved and ruled being that of Lewis *v.* Raleigh, 77 N. C. 230, in which a municipal corporation was held liable in damages for the death of a person, the jury having found that his death was "accelerated by the noxious air of the guard-house" of the city, in which he was confined. The decision of the court was expressly based upon the wise and humane provision of the constitution of the State, which provided that "it shall be required by competent legislation that the structure and superintendence of penal institutions of the State, the county jails, and city police prisons secure the health and comfort of the prisoners," and upon certain provisions of the code of that State with reference to furnishing necessary supplies to jailers and the care to be taken by sheriffs and jail-keepers of prisoners and the rooms in which they are confined. And in the opinion in Moffit *v.* Asheville,

supra, Avery, J., said, that when the aldermen of Asheville, who were vested with authority to erect a city prison, "built the police guard-house in the exercise of their power, the city became as fully amenable for its proper construction and superintendence, as the General Assembly was required by the constitution to make it answerable by competent legislation." But he further said: "The defendant, in the discharge of its judicial duties, could not have incurred any liability in any view of the case, but for the express provisions of the constitution and laws." For the sake of humanity, we can but regret that there are no such express provisions in the constitution and laws of our own State in reference to municipal prisons. The only case that we have found in which a municipal corporation has been held liable in damages for injuries sustained by a person confined in its prison, in consequence of its unwholesome condition, where there was no express constitutional or statutory provision upon which to base the decision, is that of Edwards *v.* Pocahontas, 47 Fed. Rep. 268, in which Judge Paul held, "That a town which used a jail of its own was liable for injuries to the health of a prisoner caused by its filthy condition; since under section 927 [of the Code of Virginia] and a special provision of its charter, it might have used a county jail, subject to inspection and control."

In view of the decisions of this court in reference to the nonliability of municipal corporations when exercising governmental functions, and the overwhelming weight of outside authority in cases similar to the one we have under consideration, we are constrained to hold that the defendant is not liable to the plaintiff for any injuries which he may have sustained while confined in the city-guard-house, by reason of its improper construction and unwholesome condition, or by reason of the failure of the municipal authorities to provide the means by which he could have protected himself from the inclemency of the weather during his imprisonment.

2. We think that the municipal corporation was not liable, for another reason. The petition alleges that the plaintiff "was, without just cause, arrested by police officers of the City of Griffin without a warrant and was placed in a certain place called the guard-house of the said city"; that "he was not drunk

or disorderly, and no reasonable cause can be assigned for such conduct on the part of the city government, and he was not guilty of any violation of law whatever." If he was arrested without just cause, was not drunk or disorderly, was not guilty of any violation of law whatever, and no reasonable cause can be assigned for the conduct of the police officers in arresting and imprisoning him, then clearly his arrest and consequent imprisonment were the result of the tortious acts of the police officers; and for such acts committed by its policemen a municipal corporation is not liable. Section 744 of the Political Code provides that "A municipal corporation is not liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law." "A municipal corporation is not liable to an action for damages for the illegal arrest of a citizen by one of the police officers of the city." *Cook* v. *Macon*, 54 *Ga*. 468; *McElroy* v. *Albany*, 65 *Ga*. 387. Nor for the consequent imprisonment of the person arrested. *Harris* v. *Atlanta*, 62 *Ga*. 290. In *Attaway* v. *Cartersville*, 68 *Ga*. 740, the plaintiff alleged that the marshal and a policeman of the city, "in executing the commands of the said mayor and aldermen, did arrest and imprison him for the space of ten days in the calaboose of the said city, without lawful warrant, and without the authority of law; that the said imprisonment was wanton, inhuman, and brutal, because of the size, ventilation, and filthy condition of said calaboose," and "that by reason of said unlawful imprisonment he became sick." In the court below there was a demurrer to the declaration, which was sustained, and this court affirmed the judgment, upon the ground "that the city is not liable for the illegal acts of police officers," the court citing the three cases last above cited.

3. The defendant corporation was not liable for the act of the mayor in requiring the plaintiff to give a larger bond than the law authorized. In fixing the amount of the bond, the mayor acted in a judicial capacity, and for an error committed in the exercise of judicial authority a municipal corporation is not liable. Political Code, § 748; *Bartlett* v. *Columbus*, 101 *Ga*. 300. *Judgment affirmed. All the Justices concurring.*